1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION,<br><br>                       Plaintiff,<br><br>   v.<br><br>GARY N. WAYMAN,<br><br>                 Defendant. | Case No.  13-CV-02203-BAS(BLM)<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 17);**<br><br>**(2) DENYING MOTION FOR LEAVE TO FILE COUNTERCLAIMS (ECF NO. 21); AND**<br><br>**(3) DENYING MOTION TO STRIKE LATE FILED PAPERS (ECF NO. 40)** |

21               Pending before the Court is a motion for summary judgment[1] filed by Plaintiff

22     U.S. Bank National Association ("U.S. Bank") against Defendant Gary N. Wayman,

23     an individual, dba Postal Centre, and dba Cashman Postal Services ("Wayman")

24     (ECF No. 17), Wayman's motion for leave to file late counter-claims against Plaintiff

25     (ECF No. 21), and U.S. Bank's objection and motion to strike late-filed papers

26     submitted by Wayman in opposition to the motion for summary judgment (ECF No.

27     _____

28              [1]     Although titled a "motion for summary judgment", the present motion only seeks partial summary judgment.

40).

The Court heard oral argument on these motions on September 28, 2015.  For the following reasons, the Court **GRANTS** U.S. Bank's motion for summary judgment, **DENIES** Wayman's motion for leave to file late counter-claims against U.S. Bank, and **DENIES** U.S. Bank's motion to strike late-filed papers submitted by Wayman in opposition to the motion for summary judgment.

# I.    STATEMENT OF FACTS

U.S. Bank is a national bank that offers deposit account and other banking products.  (ECF No. 17-2 ("Lewis Decl.") at ¶ 3.)  Wayman does business as Postal Centre of Vista.  (ECF No. 1 ("Compl.") at ¶ 3; ECF No. 5 ("Answer") at ¶ 1; Lewis Decl. at Exhs. 14, 15 at No. 2.[2])  Postal Centre of Vista is a money service business that sells money orders to the public.  (ECF No. 1. at ¶ 6; ECF No. 5 at ¶ 1; Lewis Decl. at Exhs. 14, 15 at No. 3.)

On or about April 6, 1999, Wayman opened Account #9278 at U.S. Bank in the name of Gary Wayman dba Postal Centre of Vista.  (Lewis Decl. at ¶ 4 & Exhs. 14, 15 at No. 4; Compl. at ¶ 7; Answer at ¶ 1.)  Wayman signed a signature card for this account.  (Lewis Decl. at ¶ 4, Exh. 1 & Exhs. 14, 15 at Nos. 5, 6; Compl. at ¶ 25; Answer at ¶ 1.)[3]  The signature card states that "[A]LL TRANSACTIONS SHALL BE GOVERNED BY APPLICABLE LAWS AND THE BANK'S TERMS (COPY ACKNOWLEDGED AS RECEIVED HEREIN) THAT PERTAIN TO THE TYPE OF ACCOUNT AND STYLE OF OWNERSHIP INDICATED ON THIS CARD

---

[2]    *See* ECF No. 18.

[3]    Wayman admits he signed a signature card when he opened Account #9278, but states he cannot be sure if the card attached is in fact the one he signed. (Lewis Decl. at Exhs. 14, 15 at No. 5.)  The motion states that Wayman "reserves the right to view the original card in the bank's possession before agreeing that it constitutes an 'undisputed fact'." (ECF No. 35 at p. 3.)  However, Lewis' statement that this is Wayman's signature card signed by Wayman is uncontroverted.

[SOLE PROPRIETORSHIP]."  (Lewis Decl. at Exh. 1.)

At the time he opened the account, Wayman was given a copy of U.S. Bank's deposit agreement.  (*Id*. at ¶ 7, Exh. 4.)  The deposit agreement states that "[t]his agreement contains rules that apply to your accounts and your banking relationship with us."  (*Id*. at Exh. 4, at p. 3.)  The agreement further explains that "[w]hen you signed your account signature card . . . you agreed to follow our rules and regulations, including any changes or additions we may make to them in the future."  (*Id*. at p. 4.)  Among the rules in the agreement is: "[a]ny time an item deposited to your account is returned to us, we have the right without notice to charge your account."  (*Id.* at p. 7.)

On or about July 25, 2012, Wayman opened a second account, Account #6484, at U.S. Bank in the name of Gary Wayman dba Postal Centre of Vista.  (Lewis Decl. at ¶ 5 & Exhs. 14, 15 at No. 11; Compl. at ¶ 7; Answer at ¶ 1.)  Again, Wayman signed a signature card with the same language noted above.  (Lewis Decl. at ¶ 5, Exh. 2; & Exhs. 14, 15 at No. 12.)  Wayman also received a similar deposit agreement to the one noted above.  (*Id*. at ¶¶ 7, 8.)

In February 2012, the bank's deposit agreement was revised and made available to any customer, including Wayman, at any branch location and online. (Lewis Decl. at ¶ 8.)  This revised agreement was in effect during October 2012.  (*Id*.)  The deposit agreement in effect during October 2012 includes the following statements:

- **By providing a written or electronic signature on a signature card or other agreement or contract, opening, or continuing to hold an account with us, you agree to the most recent version of this Agreement. . . . If any terms of your signature card . . . are inconsistent with the terms of this Agreement, the terms of this Agreement will control**.  (*Id*. at Exh. 5, p. 3.)

- **DEPOSITS[.]**  When you make a non-cash deposit to your account, we give you credit for that deposit, but that credit is provisional (temporary).  If the deposit needs to be collected from another financial institution, we must be paid before the

credit becomes final.  After a credit is final it may still be reversed.  (*Id*. at Exh. 5, p. 6.)

- **RETURNED DEPOSITS AND CASHED ITEMS[.]**  The funds you deposit to your account are subject to normal collection processes even after we make the funds available to you for withdrawal (i.e., the check has "cleared").  If we do not collect the funds, or we need to return the funds, your deposit will be reversed and become your responsibility.  (*Id*. at Exh. 5, p. 7; *see also* p. 30.)

- **Your responsibilities for overdrafts:** If you have an overdraft, you must deposit enough money into your account to pay the overdraft and the fees we charge, and you must do so immediately.  If you share ownership of your account with someone else, you are responsible to us for the overdraft, whether or not you personally caused the overdraft or benefited from it. (*Id*. at Exh. 5, p. 11.)

On October 5, 2012, an over-the-counter deposit was made to Account #9278 in the amount of $160,139.49, consisting of $11,000 cash and $149,139.49 in money orders.  (*Id*. at ¶ 16, Exh. 9 & Exhs. 14, 15 at No. 18.)  The money orders consisted of 304 money orders issued by Continental Express Money Order Co., Inc. ("Continental"), and payable through Continental's bank, North American Banking Company ("North American").  (*Id*.)

On October 9, 2012, another over-the-counter deposit was made to Account #9278 in the amount of $176,632.81, consisting of $10,000 cash and $166,632.81 in money orders.  (*Id*. at ¶ 17, Exh. 10 & Exhs. 14, 15 at No. 19.)  The money orders consisted of 338 money orders issued by Continental payable through North American.  (*Id*.)[4]

---

[4]     Wayman proffers a declaration from Jorge Leon, a former employee of the Postal Centre in Vista, stating that he "prepared the deposits on October 5, 2012 and October 9, 2012 and remember[s] clearly that 642 money orders were not deposited on those two days."  (ECF No. 35-3 at ¶ 4.)  Leon further states "[t]here is no way that I deposited 338 money orders on October 9, 2012" and "[t]here is no way that I deposited 304 money orders on October 5, 2012."  (ECF No. 35-3 at ¶¶ 6, 7.)

Once these deposits were made, U.S. Bank extended $315,772.30 in provisional credit to Wayman while it waited for North American to make good on the money orders. (*Id.* at ¶¶ 18-20.) On October 15, 2012, U.S. Bank received notice from North American that 639 of the deposited money orders totaling $314,737.14 were being returned unpaid due to a stop payment. (*Id.* at ¶ 21.) On October 17, 2012, two more money orders totaling $1,000 were returned unpaid by North American due to a stop payment. (*Id.*) In total, there were 641 returned money orders, totaling $315,737.14, and North American never paid U.S. Bank. (*Id.* at ¶ 22, Exh. 11.)

From October 9, 2012 to October 15, 2012, after the provisional credits for the money orders had been applied to Account #9278, the majority of provisional credit given to Wayman was spent. (*Id.* at ¶ 26.) A total of $349,715.00 was transferred online from Account #9278 to Account #6484. (*Id.* at ¶ 27.) The online transfers could only have been made by a person using the unique ID and password created for Account #9278 and Account #6484. (*Id.* at ¶¶ 10-12, 26-27.) A total of $179,701.60 was dispersed in electronic payments to third parties, including Continental, Western Union, Budget Prepay, Paychex and The Hartford. (*Id.* at ¶ 26.) In addition, there was a loan payment to Wayman's consumer loan account ($949.12), check card purchases ($435.03), and payment of a check to "Postmaster" ($22.48) during this period. (*Id.*) Surveillance footage also shows that Wayman took out cash withdrawals from Account #9278 totaling $26,000 between October 11-15, 2012. (*Id.* at ¶ 28, Exh. 12 & Exhs. 14, 15 at No. 30.) On October 15, 2012, before any money orders were reversed, Account #9278 had a balance of $5,020.82. (*Id.* at

---

To the extent U.S. Bank objects to this Declaration, the objections are overruled. However, ultimately the fact that Mr. Leon states he did not deposit the money orders is not dispositive. He states he prepared the deposits, but does not say he actually made the deposits. Furthermore, what Mr. Leon did on those days does not explain deposits someone else might have made to the account on those days. The fact that the money orders were deposited to Wayman's account is still uncontroverted.

1    ¶ 31.)

2         On October 15, 2012, U.S. Bank reversed the deposit of the 639 money orders

3    returned that day, and charged back the amount of the provisional credit it had given

4    Wayman for those money orders in the amount of $314,737.14.  (*Id*. at ¶ 24.)  On

5    October 17, 2012, U.S. Bank reversed the deposit of the 2 money orders returned that

6    day in the amount of $1,000.  (*Id*. at ¶ 25.)  The reversals resulted in a balance to

7    Account #9278 on October 17, 2012 of -$312,817.39.  (*Id*.)

8         On November 15, 2012, U.S. Bank exercised its set off rights and applied the

9    positive balance in Account #6484 ($160,652.46) to the negative balance that was

10   reflected in Account #9278.  (*Id*. at ¶ 29, Exh. 13.)  From October to December, 2012,

11   Account #9278 incurred overdraft charges, charges for returned checks, account

12   analysis and other fees and charges in the amount of $9,602.89.  (*Id*. at ¶¶ 30-31, 33.)

13   Thus, the total owed on Account #9278 when it was finally closed in December 2012

14   was $159,666.75.  (*Id*. at ¶¶ 30, 31.)[5]  U.S. Bank therefore sustained a loss of

15   $159,666.75 in connection with the returned deposit items and this amount has not

16   been repaid to date.  (*Id.* at ¶¶ 33-34.)

17   **II.    PROCEDURAL HISTORY**

18        On March 3, 2014, United States Magistrate Judge Major issued a Case

19   Management Conference Order Regulating Discovery and Other Pretrial

20   Proceedings.  (ECF No. 13.)  She ordered that any motion to amend the pleadings be

21   filed by June 2, 2014.  (*Id*. at 1.)  The discovery cut-off was October 13, 2014.  (*Id*.

22   at 3.)  All pretrial motions were to be filed by November 14, 2014.  (*Id*.)  A Final

23   Pretrial Conference was set for February 24, 2015.  (*Id*. at 7.)

24        On August 15, 2014, U.S. Bank filed a motion for summary judgment.  (ECF

25   No. 17.)  At the time, Wayman was appearing pro per, but on September 12, 2014,

26

27        [5]    Starting with a balance of $5,020.82, less $315,737.14 in returned

28   money orders, plus $160,652.46 set off from Account #6484, less $9,602.89 in
     charges and fees.  (Lewis Decl. at ¶31.)

he filed a motion to substitute in counsel, which was granted on September 25, 2014. (ECF Nos. 20, 22.)  Simultaneously with the motion to substitute in counsel, Wayman filed a motion for leave to file counter-claims.  (ECF No. 21.)   U.S. Bank opposes. (ECF No. 32.)

Upon the request of new counsel, the Court gave Wayman until November 3, 2014 to file an opposition to the motion for summary judgment.  (ECF No. 31.) Wayman filed his opposition on November 3, 2014, but added a declaration and an exhibit to the motion for summary judgment on November 4, 2014.  (ECF No. 35.) U.S. Bank filed an objection to and motion to strike the late-filed exhibit and declaration.  (ECF No. 40.)

## III.   LEGAL STANDARD

### A.   Motion for Summary Judgment

Summary Judgment is appropriate under Rule 56(c) when the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 77 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *Id*. at 322-23.  "Disputes over irrelevant or unnecessary facts

1    will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec.*
2    *Contractors Ass'n*, 809 F.2d 626 630 (9th Cir. 1987).

3         "The district court may limit its review to documents submitted for the purpose
4    of summary judgment and those parts of the record specifically referenced therein."
5    *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).
6    The court is not obligated "to scour the record in search of a genuine issue of triable
7    fact." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v.*
8    *Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)).  If the moving party
9    fails to discharge this initial burden, summary judgment must be denied and the court
10   need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398
11   U.S. 144, 159-60 (1970).

12        If the moving party meets this initial burden, the nonmoving party cannot
13   defeat summary judgment merely by demonstrating "that there is some metaphysical
14   doubt as to the material facts." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio*
15   *Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D Co.*,  68 F.3d
16   1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support
17   of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at
18   242, 252).  Rather, the nonmoving party must "go beyond the pleadings" and by "the
19   depositions, answers to interrogatories, and admissions on file," designate "specific
20   facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324
21   (quoting Fed. R. Civ. P. 56(e)).

22        When making this determination, the court must view all inferences drawn
23   from the underlying facts in the light most favorable to the nonmoving party. *See*
24   *Matsushita*. 475 U.S. at 587.  "Credibility determinations, the weighing of evidence,
25   and the drawing of legitimate inferences from the facts are jury functions, not those
26   of a judge, [when] he [or she] is ruling on a motion for summary judgment."
27   Anderson, 477 U.S. at 255.
28   ///

1

### B.     Motion for Leave to File Counterclaims

After a scheduling order has been issued setting a deadline to amend the pleadings, and a party moves to amend the pleadings after the deadline, the motion amounts to one to amend the scheduling order and thus is properly brought under Rule 16(b). *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 605, 608 (9th Cir. 1992). Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking amendment. *Id.* at 609. "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasoning for seeking modification." *Id.* The party seeking to continue or extend the deadlines bears the burden of proving good cause. *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002); *Johnson*, 975 F.2d at 608-09.

In addressing the diligence requirement, one district court in this Circuit noted:

> [T]o demonstrate diligence under Rule 16's "good cause" standard, the movant may be required to show the following: (1) that [it] was diligent in assisting the Court in creating a workable Rule 16 order..; (2) that [its] noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding [its] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference...; and (3) that [it] was diligent in seeking amendment of the Rule 16 order, once it became apparent that [it] could not comply with the order....

*Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (internal citations omitted). If the district court finds a lack of diligence, "the inquiry should end." *Johnson*, 975 F.2d at 609. If, however, the movant clears the Rule 16 bar, the Court proceeds to considering the motion under the usual standard of Rule 15. *Campion v. Old Republic Home Protection Co., Inc.*, 861 F. Supp. 2d 1139, 1150 (S.D. Cal. 2012).

1   "Rule 15(a) is very liberal and leave to amend 'shall be freely given when

2   justice so requires.'" *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946,

3   951 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)); *see also Kaplan v. Rose*, 49 F.3d

4   1363, 1370 (9th Cir. 1994) (noting the "strong policy in favor of allowing

5   amendment"). However, "a district court need not grant leave to amend where the

6   amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces

7   an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp.*, 465 F.3d at

8   951. These factors are not of equal weight as prejudice to the opposing party has

9   long been held to be the most crucial factor in determining whether to grant leave to

10  amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003);

11  *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990); *Howey v. United*

12  *States*, 481 F.2d 1187, 1190 (9th Cir. 1973).

13      A delay of two years, while not enough alone to support denial of a motion to

14  amend, is nevertheless relevant. *Morongo Band of Mission Indians v. Rose*, 893 F.2d

15  1074, 1079 (9th Cir. 1991). Furthermore, the fact that the proposed new claims

16  greatly alter the nature of the litigation and require a defendant to undertake, at the

17  last minute, an entirely new course of defense, again, while not the sole factor, is also

18  something the court should consider. *Id.*

19      A court should more carefully scrutinize a party's attempt to raise new theories

20  of recovery by amendment when the opposing party has filed a motion for summary

21  judgment. *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999). This raises concerns

22  about seriatim presentation of facts and issues. *Id.* "A plaintiff who proposes to

23  amend his complaint after the defendant has moved for summary judgment may be

24  maneuvering desperately to stave off the immediate dismissal of the case." *Cowen*

25  *v. Bank United of Tex., FSB*, 70 F.3d 937, 944 (7th Cir. 1995).

26  ///

27  ///

28  ///

# IV.   DISCUSSION

## A.   Motion for Summary Judgment

U.S. Bank moves for summary judgment on the second cause of action for breach of contract and the third cause of action for refund under section 4214 of the California Commercial Code.[6]  On the breach of contract claim, U.S. Bank argues it is "entitled to judgment as a matter of law because the undisputed facts establish there are no triable issues of material fact as to Wayman's breach of the [Deposit] Agreement by refusing to repay U.S. Bank for the uncollected portions of the provisional credits it provided in connection with the returned deposit items and any resulting overdraft."  (ECF No. 17-1 at p. 10, line 27 to p. 11, line 4.)  On the section 4214 claim, U.S. Bank argues it is entitled to judgment as a matter of law because "Wayman expressly admits U.S. Bank is entitled to a refund for any collected portion of the provisional credit," and the undisputed facts establish that U.S. Bank had the "statutory right to reverse the deposit, charge back the provisional credit it gave Wayman for the money orders, and obtain a refund for any uncollected portion of the provisional credit."  (*Id*. at p. 16, lines 1-12.)  In response, Wayman asserts the affirmative defense of unclean hands.  (ECF No. 35.)

### 1.   Breach of Contract

To recover on a breach of contract claim, U.S. Bank must prove the following: (1) the existence of a contract between Plaintiff and U.S. Bank; (2) U.S. Bank's performance of the contract or excuse for non-performance; (3) Wayman's breach of the contract; and 4) damages caused by Plaintiff's breach.  *See Bushell v. JPMorgan Chase Bank, N.A*., 220 Cal. App. 4th 915, 921 (2013) (citing *Reichert v. General Ins. Co*., 68 Cal. 2d 822, 830 (1968)).  "The relationship of bank and depositor is founded on contract, which is ordinarily memorialized by a signature card that the depositor signs upon opening the account."  *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532,

---

[6]   U.S. Bank does not seek summary judgment on its first cause of action for fraud.  (*See* ECF No. 17-1 at p. 7, n. 5.)

537 (1998) (internal citation omitted).  By signing a signature card, a depositor may agree to be bound by the rules and regulations of the bank.  *See Larrus v. First Nat. Bank of San Mateo Cnty.*, 122 Cal. App. 2d 884, 889-90 (1954).

In this case, U.S. Bank submits uncontroverted evidence that Wayman signed a bank signature card when he opened Account #9278 and thereby entered a contract with U.S. Bank.  (Lewis Decl. at ¶ 4, Exh. 1; Compl. at ¶ 25; Answer at ¶ 1.)  All transactions on the account were therefore subject to applicable laws and the bank's terms, including the deposit agreement.  (*See id.*)  U.S. Bank submits uncontroverted evidence that $315,737.14 in money orders were deposited into Account #9278, on which U.S. Bank extended provisional credit.  (*See id.* at ¶¶ 16, 17, 18, Exhs. 9, 10.)  U.S. Bank also submits uncontroverted evidence that the money orders were later returned unpaid due to a stop payment instruction.  (*See id.* at ¶¶ 21-25, Exh. 11.)  Pursuant to the deposit agreement, U.S. Bank was authorized to reverse the deposits and charge back the provisional credit.  (*See id.* at Exhs. 1, 5.)  Wayman was then required to repay the unpaid amount back to U.S. Bank.  (*See id.*)  Because Wayman has failed to repay the unpaid amount back in its entirety, U.S. Bank has been damaged in the amount of $159,666.75.  (*See id.* at ¶¶ 33-34.)

Based on the foregoing, U.S. Bank is entitled to judgment as a matter of law on its breach of contract claim and U.S. Bank's motion for summary judgment on its second cause of action is **GRANTED**

## 2. California Commercial Code Section 4214

As explained in *Symonds v. Mercury Savings and Loan Assoc.*, 225 Cal. App. 3d 1458 (1990):

> When a customer deposits a check [or a money order] drawn on another bank, the customer receives a provisional credit for the amount of the check [or money order].  The collecting bank, acting as the customer's agent, then forwards the check [or money order] to the payor bank or a presenting bank which gives the collecting bank a provisional credit.  If the check [or money order] is forwarded to a presenting bank, the presenting bank in turn presents the check [or money order] to the payor

> bank from which the check [or money order] is to be drawn and receives
> a provisional credit.  If the payor bank does not promptly dishonor the
> check [or money order], the provisional settlements through this chain
> of banks become final.

*Id.* at 1464 (internal citations omitted); *see also* Cal. Com. Code §§ 4215(a) & (b), 3104(f) (defining "check" to include a money order).  Until final settlement for an item is made, any settlement given for the item is provisional.  *Holcomb v. Wells Fargo Bank, N.A.*, 155 Cal. App. 4th 490, 497 (2007) (citing Cal. Com. Code § 4201); *see also* Cal. Com. Code § 4104(a)(11) (defining "Settle"), § 4104(a)(9) (defining "Item").  "An item is finally paid by a payor bank when the bank has first done any of the following: (1) Paid the item in cash[;] (2) Settled for the item without having a right to revoke the settlement under statute, clearing house rule, or agreement[; or] (3) Made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing house rule, or agreement."  Cal. Com. Code § 4215(a).  Section 4214 of the California Commercial Code allows a bank to charge back an item which has been given as a provisional settlement but is then dishonored before final settlement.  *See* Cal. Com. Code § 4214(a).

Here, the uncontroverted evidence shows that U.S. Bank provided provisional credit to Wayman's Account #9278 totaling $315,772.30 based on the deposit of 642 money orders, and the money orders on which the credit was extended were later returned unpaid due to a stop payment by the payor bank, North American.  (*See* Lewis Decl. at ¶¶ 18-22, Exh. 11.)  Therefore, no final settlement was made and U.S. Bank is entitled to a refund for the amount of credit given.  *See Symonds*, 225 Cal. App. 3d at 1464-65 ("When the payor bank timely dishonors a check, section 4212 grants a bank the right to charge back the amount provisionally credited …..").  U.S. Bank also presents uncontroverted evidence that it promptly reversed and charged back the provisional credit it provided to Wayman once the money orders were returned, and promptly notified Wayman of this fact.  (*See* Lewis Decl. at ¶¶ 21-25 & Exh. 11.)

1    Based on the foregoing, U.S. Bank is entitled to judgment as a matter of law

2 on its refund claim and U.S. Bank's motion for summary judgment on its third cause

3 of action is **GRANTED**.

4    3.    <u>Affirmative Defense</u>

5    Wayman claims that U.S. Bank is not entitled to recovery because U.S. Bank

6 suffers from "unclean hands", in that the bank failed to exercise ordinary care in

7 detecting that the money orders were deposited fraudulently.  (ECF No. 35 at pp. 3-

8 5.)  Wayman argues that the fraudulent money orders were deposited by his General

9 Manager, without his knowledge, and it was Wayman's action that eventually led to

10 the fraud detection.  (*Id.*; *see also* ECF No. 35-2 ("Wayman Decl.") at ¶¶ 9-15, 18.)

11 Wayman argues U.S. Bank is at fault for accepting the fraudulent money orders and

12 for failing to notify him that his General Manager was making out of the ordinary

13 deposits.  (*Id.*)

14    The doctrine of unclean hands, which Wayman asserts as an affirmative

15 defense, "demands that a plaintiff act fairly in the matter for which he seeks a

16 remedy."  *Kendall-Jackson Winery, Ltd. v. Super. Ct*., 76 Cal. App. 4th 970, 978

17 (1999).  A plaintiff "must come into court with clean hands, and keep them clean, or

18 he will be denied relief, regardless of the merits of his claim."  *Id*.  In handling a

19 check or money order, a collecting bank "must use ordinary care in presenting the

20 check for collection or for sending it for presentment."  *Symonds*, 225 Cal. App. 3d

21 at 1464 (citing Cal. Com. Code § 4202(1)(a)).  "A collecting bank exercises ordinary

22 care . . . by taking proper action before its midnight deadline following receipt of an

23 item, notice, or settlement."  Cal. Com. Code § 4202(b).  However, banks are not

24 responsible for monitoring their client's accounts for wrongdoing.  *Chazen*, 61 Cal.

25 App. 4th at 537-41.  The "contractual relationship does not involve any implied duty

26 'to supervise account activity' or 'to inquire into the purpose for which the funds are

27 being used.'"  *Id*. at 537 (internal citations omitted).  Furthermore, "[t]he right to

28 charge back is not affected by . . . [f]ailure by any bank to exercise ordinary care with

1  respect to the item," *Wells Fargo Bank, N.A. v. FSI Financial Solutions, Inc*., 196

2  Cal. App. 4th 1559, 1570 (2011) (quoting Cal. Com. Code § 4214(d)(2)), or by the

3  lack of an endorsement or signature on a deposited item, *see Lema v. Bank of Am*.,

4  375 Md. 625, 639-641 (Md. App. 2003); *Oswald Mach. & Equip., Inc. v. Yip*, 10 Cal.

5  App. 4th 1238, 1247 (1992); Cal. Com. Code § 4214.

6        The Court finds Wayman has failed to raise a triable issue of material fact as

7  to his defense of unclean hands.  Wayman does not establish that U.S. Bank failed to

8  exercise ordinary care, that it was responsible for monitoring Wayman's account, or

9  that it otherwise acted with fraud and in bad faith.

10       **B.     Motion for Leave to File Counter-Claims**

11       After the filing of U.S. Bank's motion for summary judgment, Wayman moved

12  to add five counter-claims.  (ECF No. 21.)   In his proposed counter-complaint,

13  Wayman first alleges that U.S. Bank breached its contract when it (1) failed to send

14  monthly account statements, (2) sent photocopies of checks but not of the money

15  orders, and (3) accepted as deposits unendorsed money orders.  (*See* ECF No. 21-2

16  at p. 5.)  Second, Wayman claims both intentional and negligent interference with

17  contractual advantage alleging U.S. Bank interfered with his relationship with

18  Continental.  (*See id.* at pp. 6-7.)  Third, Wayman alleges U.S. Bank aided and abetted

19  fraud because it was aware of his General Manager's schemes and aided and abetted

20  them.  (*See id.* at p. 8.)  Finally, Wayman alleges a counter-claim against U.S. Bank

21  for negligence.  (*See id.* at p. 9.)

22       Although Wayman files his motion relying on Federal Rule of Civil Procedure

23  15, as laid out above, motions to amend pleadings after the scheduling cut-off must

24  show "good cause" under Federal Rule of Civil Procedure 16.  *See Johnson*, 975 F.2d

25  at 608.   After consideration of the relevant factors, the Court denies Wayman's

26  motion for leave to file a counter-complaint for the following reasons.  First, Wayman

27

28

has failed to move to amend the scheduling order.[7]  Even construing this motion as one to amend the scheduling order, the Court highlights that Wayman filed this motion well after the scheduled deadline to amend the pleadings and one month before the discovery cut-off date.  Wayman claims he failed to file the counter-complaint sooner because he was acting pro per and believed he could amend to add the counter-claims at any time.  However, the scheduling order specifically informed Wayman, even if he was acting pro per, that any motion to amend the pleadings must be filed by June 2, 2014.  (*See* ECF No. 13.)  Thus, the Court finds a lack of diligence in seeking to amend the scheduling order.

While the inquiry should end there, *see Johnson*, 975 F.2d at 609, the Court will continue and analyze Wayman's motion under Rule 15.  Despite Rule 15's liberal standards, a district court need not grant leave to amend where the amendment would cause prejudice to the opposing party and undue delay, or is futile. *See AmerisourceBergen Corp*., 465 F.3d at 951.  The Court finds all three present here.  At this stage, permitting Wayman leave to file late counterclaims would require reopening discovery, as well as an additional motion for summary judgment which would cause undue prejudice to U.S. Bank.  The fact that Wayman waited to file a counter-complaint until after U.S. Bank filed its motion for summary judgment is significant.  *See Parish*, 195 F.3d at 764; *Cowan*, 70 F.3d at 944.  Wayman attempts to greatly alter the nature of the litigation by changing it from a simple breach of contract action to one adding additional claims and parties, including negligent and intentional interference with a contractual advantage involving a third party.  Moreover, several of Wayman's proposed counterclaims appear to be another attempt to argue his failed affirmative defenses.  For the reasons stated above,

---

[7]  A court may deny as untimely a motion for leave to amend after a scheduling order deadline has passed, simply because the party seeking an extension of time did not request a modification of the scheduling order as well.  *See Johnson*, 975 F.2d at 608.

1   Wayman's allegations do not alter the fact that U.S. Bank is entitled to a return of the
2   money.  Accordingly, Wayman's motion for leave to file late counterclaims against
3   U.S. Bank is **DENIED**.
4   **V.     CONCLUSION**
5           For the foregoing reasons, U.S. Bank's motion for summary judgment (ECF
6   No. 17) on its second and third causes of action in the amount of $159,666.75 against
7   Wayman is **GRANTED**.  In addition, Wayman's motion for leave to file late counter-
8   claims against U.S. Bank (ECF No. 21) is **DENIED**, and U.S. Bank's motion to strike
9   late-filed papers (ECF No. 40) is **DENIED**.
10          **IT IS SO ORDERED.**
11
12   **DATED:  September 30, 2015**

**Hon. Cynthia Bashant**
**United States District Judge**